1  Shaun Setareh (Cal. State Bar No. 204514)
     shaun@setarehlaw.com
2  William M. Pao (Cal. State Bar No. 219846)
     william@setarehlaw.com
3  Jose Maria D. Patino, Jr. (Cal. State Bar No. 270194)
     jose@setarehlaw.com
4  SETAREH LAW GROUP
   9665 Wilshire Boulevard, Suite 430
5  Beverly Hills, California 90212
   Telephone (310) 888-7771
6  Facsimile (310) 888-0109

7  Attorneys for Plaintiff
   RONNIE WILLIAMS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| RONNIE WILLIAMS, on behalf of himself, all others similarly situated,<br><br>   *Plaintiff*,<br><br>  vs.<br><br>PERDUE FARMS INC., a Maryland corporation; PERDUE FOODS LLC, a Maryland limited liability company; PETALUMA ACQUISITION, LLC, a Delaware limited liability company; COLEMAN NATURAL PRODUCTS, INC., a Delaware corporation; COLEMAN NATURAL FOODS, LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,<br><br>   *Defendants*. | Case No.: 3:19-CV-07671-MMC<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>***Hearing Information***<br>Date:   January 27, 2023<br>Time:   9:00 a.m.<br>Judge:   Hon. Maxine M. Chesney<br>Place:   Courtroom 7<br>      450 Golden Gate Avenue<br>      San Francisco, CA 94102<br><br>Action Filed:  October 11, 2019<br>Action Removed: November 21, 2019<br>FAC Filed:   March 16, 2020<br><br>***Submitted Under Separate Cover***<br> 1. Declaration of Mary Butler Regarding Notice and Settlement Administration<br> 2. [Proposed] Order Granting Final Approval |

# TABLE OF CONTENTS

*Page*

Table of Authorities .................................................................................................................. ii

<u>NOTICE OF MOTION AND MOTION</u> ................................................................................. 1

<u>MEMORANDUM IN SUPPORT OF MOTION</u> ..................................................................... 1

I.    INTRODUCTION/SUMMARY OF ARGUMENT ........................................................ 1

II.   BACKGROUND ............................................................................................................. 2

III.  THE SETTLEMENT ....................................................................................................... 5

    A.   The Settlement Class ............................................................................................ 5

    B.   Notice Process ....................................................................................................... 5

    C.   Maximum Settlement Amount and Distributions ................................................. 7

    D.   Scope of the Class Member Releases ................................................................... 8

IV.   THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL .......................... 9

    A.   The Best Practical Notice of Settlement Has Been Provided to the Class .......... 9

    B.   The CAFA Notice Requirements Have Been Satisfied ...................................... 10

    C.   Final Approval Standards under Rule 23 ............................................................ 10

    D.   The Settlement Is Presumptively Fair Because of the Positive Response to the Settlement by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arm's-Length Negotiations ...................................... 11

        1.   Class Members' Response to the Settlement Is Positive ......................... 12

        2.   The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues .................... 12

        3.   Counsel's Endorsement of the Settlement Is Entitled to Great Weight ... 12

        4.   The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations. .................................................................... 13

        5.   The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation ............................... 13

            a.   The Value of the Settlement Favors Final Approval .................... 13

            b.   Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members ........................................................... 14

V.    CONCLUSION .............................................................................................................. 15

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610 (N.D. Cal. 1979) .................................................... 12, 14

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................. 13

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ..................................................... 15

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) ............................ 2, 11, 12

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ......................................... 12, 14

*Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........... 11

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .................................................. 15

*Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ................................. 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................................... 11, 14

*Hughes v. Microsoft Corp.*, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001) ............. 14

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................................................... 13

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ............................................................ 14

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................................................. 15

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass. 1987) ..... 12

*Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832 (9th Cir. 1976) .................................. 13

*Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 (E.D. Cal. Jan. 3, 2014) ..................... 16

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................................. 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................. 13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ....................... 11, 12, 15

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) .......................................................................... 12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................ 10

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .................................................... 14

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) .......................................................... 2, 11

*Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ................................... 16

*Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314 (N.D. Cal. 2013) ..................................................... 14

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) .................................................. 12

(*cont'd*)

**STATE CASES**

*Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004 (2012) .................................................. 14

**STATUTES**

28 U.S.C. § 1715 ........................................................................................................................... 10

Fed. R. Civ. P. 23 ..................................................................................................................... 2, 11

**NOTICE OF MOTION AND MOTION**

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on January 27, 2023 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 7 of this Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Maxine M. Chesney, plaintiff RONNIE WILLIAMS ("Plaintiff") will and hereby does move the Court to grant, pursuant to Rule 23, Federal Rules of Civil Procedure, final approval of the Parties' First Amended Joint Stipulation of Class Action and PAGA Settlement Agreement (the "Settlement") (ECF 68-1), and entry of judgment in accordance with the Settlement.

The Parties make this motion on the grounds that the Settlement, which was reached after arm's-length negotiations by counsel for Plaintiff and the Class, and counsel for Defendants, is fair and reasonable, has drawn an overwhelmingly favorable response from the Class (indeed, not a single objection to the Settlement was made), and should be given final approval by the Court for all the reasons set forth in the memorandum in support of the motion.

The motion is based on this notice of motion and motion; the following memorandum in support of the motion; the accompanying Declaration of Mary Butler Regarding Notice and Settlement Administration; the declarations of Shaun Setareh (ECF 72-1), Plaintiff (ECF 72-2), and Mary Butler (regarding administration costs) (ECF 72-3) that were submitted concurrently with Plaintiff's motion for attorneys' fees and costs, enhancement award to Plaintiff, and settlement administration costs (ECF 72); the proposed form of Order Granting Motion for Final Approval of Class Action and PAGA Settlement; all matters of which the Court may take notice; and any oral and documentary evidence presented at the hearing on the motion.

**MEMORANDUM IN SUPPORT OF MOTION**

**I.   INTRODUCTION/SUMMARY OF ARGUMENT**

The Parties' Settlement of this wage-and-hour class and PAGA representative action meets the criteria for final approval. The Settlement fairly resolves Plaintiff's claims that Defendants violated California wage-and-hour laws by failing to pay him and the settlement classes for off-the-clock work; provide them with compliant meal and rest periods; reimburse them for required expenses; provide them with compliant wage statements; and pay their final wages on time. The Settlement is the product of arm's-length negotiations by experienced counsel after significant informal discovery, and recognition of the strengths and weaknesses of

each side's positions. The Settlement has received the overwhelming support of the Class, with not a single objection to the Settlement made.

The Settlement, in the amount of $1,775,000, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Specifically:

- Class Counsel (who are highly experienced handling complex wage-and-hour class and PAGA representative actions) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action before agreeing to the Settlement. (ECF 72-1, ¶¶ 31-32.)
- The Settlement is consistent with the strengths and weaknesses of Plaintiff's claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).
- The Class responded overwhelmingly favorably to the Settlement. The Settlement Administrator received only **four** complete and timely opt-out requests and **no** objections from the 2,120 Class Members who received notice of the Settlement. (Declaration of Mary Butler Regarding Notice and Settlement Administration ("Butler Decl."), ¶ 3.)

Thus, Plaintiff respectfully submits that final approval of the Settlement should be granted and judgment entered accordingly.

## II. BACKGROUND

Defendants produce food products including meat and poultry sourced from American farmers. (ECF 49-1 at 2, ¶ 4.) Defendants hired Plaintiff in approximately October 2016 as an associate trainer. (*Id*.)

On October 10, 2019, Plaintiff submitted his PAGA Notice to the California Labor & Workforce Development Agency ("LWDA"). (ECF 49-1 at 2, ¶ 5.) On October 11, 2019, Plaintiff filed a Class Action Complaint in the Superior Court of the State of California for the County of San Francisco alleging nine causes of action against Defendants for: (1) Violation of 15 U. S. C. § 1681b(b)(2)(A) (Fair Credit Reporting Act ("FCRA")); (2) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226. 7, 512, and 1198); (3) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226. 7, and 1198); (4) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997. 1 and 1198); (5) Failure to Indemnify (Lab. Code § 2802);

(6) Failure to Provide Accurate Written Wage Statements (Lab. Code § § 226(a)); (7) Failure to Timely Pay All Final Wages (Lab. Code § § 201, 202, and 203); (8) Failure to Pay Wages Without Discount (Lab. Code § 212); and (9) Unfair Competition (Bus. & Prof. Code §§ 17200 et seq.). (*Id.*) Defendants filed their answer denying liability generally and asserting certain affirmative defenses on November 20, 2019. (ECF 49-1 at 3, ¶ 6.) The action was removed to federal court November 21, 2019. (ECF 1.)

On December 27, 2019, Plaintiff filed a separate lawsuit (the "PAGA Action") with a single cause of action for civil penalties pursuant to Labor Code section 2698. (ECF 49-1 at 3, ¶ 7.) The PAGA Action was based on the same factual allegations asserted in Plaintiff's class action complaint filed on October 11, 2019. (*Id.*) The Parties met and conferred and agreed to dismiss the PAGA action and stipulate to allow Plaintiff to file the First Amended Complaint ("FAC") in the current action adding a tenth cause of action for civil penalties pursuant to Labor Code § 2698 *et seq.* (ECF 23.)

On March 16, 2020, Plaintiff filed the FAC which is the operative complaint in this Action. (ECF 25; ECF 49-1 at 3, ¶ 7.) The FAC also redefined the putative classes to adjust the relevant time periods for each one in order to carve out the time periods for the same claims released in two earlier settlements in class actions against Defendants for which approval had been granted. (ECF 49-1 at 3, ¶ 7.) Accordingly, rather than the statutory limitations period, the Class Period for each of the classes based on claims of Failure to Provide Meal Periods, Failure to Pay Hourly Wages, Failure to Timely Pay All Final Wages, Failure to Pay Wages Without Discount, and Unfair Competition is May 26, 2019 through the date of preliminary approval, and the Class Period for the Failure to Provide Accurate Written Wage Statements Class is July 18, 2020 through the date of preliminary approval. (*Id.*) On April 24, 2020, Defendants filed their answer to the FAC generally denying all of Plaintiff's allegations. (ECF 26.)

Thereafter, the Parties agreed to attend mediation with Louis Marlin, Esq., an experienced wage and hour class action mediator in order to try to resolve the case. (ECF 49-1 at 3, ¶ 8.) Through informal discovery agreed upon by the Parties in advance of mediation, Defendants provided Class Counsel with documents, including copies of all applicable versions of personnel and payroll policies, contact information for the putative class, and records reflecting Class Members' hours worked and wages paid, amongst numerous other documents, as well as payroll and time clock data for the putative class. With the information produced by Defendants, and the additional detailed data with respect to the class produced for mediation, it

1 was sufficient to permit Plaintiff's counsel to adequately evaluate the Settlement. (*Id.*)

2 On February 23, 2021, the Parties participated in an arm's-length mediation with Louis Marlin, Esq., an experienced wage and hour class action mediator, and with the aid of the mediator's evaluation, the Parties agreed to settle the Action. (ECF 49-1 at 4, ¶ 9.) At the mediation, the Parties debated their legal positions, the likelihood of certification of Plaintiffs' claims, and the legal bases for the claims and defenses. (*Id.*) Ultimately, the Parties agreed to resolve this matter on a class-wide basis and memorialized their agreement in a Memorandum of Agreement, which was signed by the parties on March 1, 2021. (*Id.*) Following further negotiations, the Parties finalized the long-form Agreement, which the Parties executed on August 23, 2021 (the "Settlement"). (*Id.*)

On December 30, 2021, the Parties filed their Joint Motion for Preliminary Approval of the Settlement. (ECF 49.) On February 11, 2022, the Court granted preliminary approval of the Settlement and set a briefing and notice schedule through a hearing on Final Approval of the Settlement. (ECF 58.) However, as the Parties were about to provide the Class List to Simpluris, Inc. to begin the class notice procedure under the terms of the Settlement, the Parties noticed that the definition of the Reimbursement Class did not match the definition for that class in the operative complaint and advised the Court of such on March 21, 2022. (ECF 61, 62.) The Court vacated the schedule established by the Preliminary Approval Order to allow the Parties time to resolve the issue and address it in an amended settlement agreement. (ECF 61.) Defendants worked to gather and analyze the workweek data for the additional Reimbursement Class Members, produced the results to Plaintiff, and the Parties revised the allocation of the NSA to the Classes accordingly and submitted the First Amended Settlement (hereinafter, the "Settlement") (ECF 68-1) to the Court on August 5, 2022. (ECF 68.) On August 26, 2022, the Court issued the Amended Preliminary Approval Order, which granted preliminary approval of the Settlement and set a new schedule for the class notice procedure and the Final Approval Hearing. (ECF 71.)

In its order, the Court found that the terms of the Settlement to be "within the range of reasonableness of a settlement that ultimately could be granted approval by the Court at a Final Approval Hearing." (*Id.*, ¶ 1.)

///

///

///

## III. THE SETTLEMENT

The following is a summary of the material elements of the Settlement.

### A. The Settlement Class

Pursuant to the Settlement terms and the Court's order granting preliminary approval, the following Classes were certified:

  a. Cause of Action No. 2 – Failure to Provide Meal Periods: All persons employed by Defendants at any time in an hourly or non-exempt position in California from May 26, 2019 until February 11, 2022.

  b. Cause of Action No. 3 – Failure to Provide Rest Periods: All persons employed by Defendants at any time in an hourly or non-exempt position in California from October 11, 2015 until February 11, 2022.

  c. Cause of Action No. 4 – Failure to Pay Hourly Wages: All persons employed by Defendants at any time in an hourly or non-exempt position in California from May 26, 2019 until February 11, 2022.

  d. Cause of Action No. 5 – Failure to Indemnify: All persons employed by Defendants in California who incurred business expenses at any time from October 11, until February 11, 2022. This includes both non-exempt and exempt employees and will be specifically referred to as the "Reimbursement Class."

  e. Cause of Action No. 6 – Failure to Provide Accurate Written Wage Statements: All persons employed by Defendants at any time in an hourly or non-exempt position in California from July 18, 2020 until February 11, 2022.

  f. Cause of Action No. 7 – Failure to Timely Pay All Final Wages: All persons employed by Defendants at any time in an hourly or non-exempt position in California who separated from their employment with Defendants at any time from May 26, 2019 until February 11, 2022.

  g. Cause of Action No. 8 – Failure to Pay Wages Without Discount: All persons employed by Defendants at any time in California who were paid their wages with a pay card and were not paid all earned wages at any time from May 26, 2019 until February 11, 2022.

  h. Cause of Action No. 9 – Unfair Competition: All persons employed by Defendants at any time in an hourly or non-exempt position in California from May 26, 2019 until February 11, 2022.

(ECF 71, ¶ 1.) There are a total of 2,157 Class Members. (Butler Decl., ¶ 6.)

### B. Notice Process

The Court directed that the proposed Class Notice be sent to Class Members in the manner specified by the Settlement and appointed Simpluris, Inc. ("Simpluris"), to administer the Settlement. (ECF 71.) The Parties implemented the Court's directions in this regard. Mary Butler with Simpluris was designated as project manager for the administration of the Settlement. (Butler Decl., ¶ 1.)

On September 2, 2022, counsel for Defendants provided Simpluris with a mailing list containing the name, last known mailing address, Social Security numbers, and pertinent employment information during the Class Period for each Class Member. (*Id.*, ¶ 3.) The Class List contained data for 2,157 unique Class Members. (*Id.*)  The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. (*Id.*, ¶ 7.) The NCOA contains changes of address filed with the U.S. Postal Service. (*Id.*) In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packets. (*Id.*)

On September 21, 2022, Simpluris mailed the Court-approved Notice Packet via First Class Mail to all 2,157 Class Members on the Class List. (*Id.*, ¶¶ 5, 8, Ex. A.)

As of December 30, 2022:

- 219 Notice Packets were returned by the post office. (*Id.*, ¶ 10.) For those without a forwarding address, Simpluris performed an advanced address search (i.e., skip trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. (*Id.*) Simpluris used the Class Member's name, previous address, and Social Security number to locate a more current address. (*Id.*) 182 Notice Packets were re-mailed to either a newfound address, with forwarding addresses provided by the United States Postal Service or at the request of the Class Member. (*Id.*) Ultimately, after additional searches, 37 Notice Packets were undeliverable because Simpluris was unable to find a better address. (*Id.*)
- Simpluris has received 4 requests for exclusion from the Settlement from the following persons: Melvin Barnett, Adonay Efriem, Ftsum Efriem Hantal, and Mario Garcia Santana Jr. (*Id.*, ¶ 11.) The last day to submit a valid request for exclusion was November 5, 2022. (*Id.*)
- Simpluris has received no objections. (*Id.*, ¶ 12.) The last day to submit a valid objection was November 5, 2022. (*Id.*)
- After the initial notice mailing, 1 individual contacted Simpluris to request inclusion in the Settlement Class. (*Id.*, ¶ 9.) Information regarding the self-identifying potential Class Member was forwarded to Defense Counsel for research to determine whether the individual should be included in the Settlement Class. (*Id.*) It was determined that the individual should not be included since the

individual's dates of employment terminated before the class period start date. (*Id.*)

- 15% of the Net Settlement Amount ("NSA"), or $182,055.62, is allocated to the Reimbursement Class containing 2,153 members. (*Id.*, ¶ 12.) The highest Reimbursement Class portion of an Individual Settlement Payment to be paid is approximately $338.27, and the average Reimbursement Class portion of an Individual Settlement Payment to be paid is approximately $84.56. (*Id.*)

- 85% of the NSA, or $1,031,648.51, is allocated to all other Settlement Classes (the non-Reimbursement Classes), which combined contain 1,996 members.[1] (*Id.*, ¶ 12.) The highest Reimbursement Class portion of an Individual Settlement Payment to be paid is approximately $338.27, and the average Reimbursement Class portion of an Individual Settlement Payment to be paid is approximately $84.56. (*Id.*)

### C. Maximum Settlement Amount and Distributions

The Settlement creates a Maximum Settlement Amount ("MSA") of $1,775,000.00. (ECF 68-1, ¶ 21.) Excluding Defendants' share of taxes on the wages portion of Individual Settlement Payments, the MSA covers all payments contemplated by the Settlement. (*Id.*) This includes: (1) all Individual Settlement Payments to Class Members; (2) Class Representative Service Award of up to $7,500 to Plaintiff in compensation for having prosecuted the action and undertaken the risk of payment of costs in the event this matter had not been successfully concluded; (3) the Class Counsel Award of not more than 1/3 of the MSA ($591,666.67), plus costs not to exceed $25,000, to compensate Plaintiff's counsel for all work performed thus far and all work remaining to be performed in documenting and administrating the Settlement and securing Court approval; (4) PAGA Penalties of $100,000, 75% of which will be paid to the LWDA, and 25% which will be paid to Settlement Class Members as part of the NSA; and (5) the fees and expenses of the Settlement Administrator, not to exceed $20,000. (ECF 68-1, ¶¶ 58(a)-(e).) However, Class Counsel are only seeking 25% of the MSA ($443,750.00) in fees, and only $20,875.87 in costs. (ECF 72-1, ¶¶ 16, 23.) Adjusting for these amounts and the other deductions from the MSA listed above, the NSA of $1,213,704.13 is available to pay the Class Members' Individual Settlement Payments. (*See* ECF 72-1, ¶ 14.)

---

[1] All Settlement Classes besides the Reimbursement Class together comprise all non-exempt employees of Defendants during the Class Period. (ECF 68, ¶ 5.) However, the Reimbursement Class includes all such Class Members *plus* the exempt employees during the Reimbursement Class Period. (*Id.*; ECF 68-1, ¶ 3(d).) Therefore, the Reimbursement Class is the largest of the Settlement Classes and includes all members of all of the other Settlement Classes combined.

15% of the NSA shall be allocated to payments to the Reimbursement Class as a "Reimbursement Payment." (ECF 68-1, ¶ 58(b).) 85% of the NSA shall be allocated to the payments of all other Classes. (*Id.*) "Individual Settlement Payments" are each the sum total of these allocations from the NSA that shall be paid to each individual Class Member. (*Id.*) To fairly allocate settlement funds based on each Class Member's dates of employment as a Class Member, the non-Reimbursement and Reimbursement components of the Individual Settlement Payments will be calculated as follows:

- Using the Class Data, the Settlement Administrator will calculate the total non-exempt Workweeks for all Settlement Class Members. (ECF 68-1, ¶ 58(b)(i).) The respective non-exempt Workweeks for each Settlement Class Member will be divided by the total non-exempt Workweeks for all Settlement Class Members, resulting in the Payment Ratio for each individual Settlement Class Member. (*Id.*) Each Settlement Class Member's Payment Ratio will then be multiplied by 85% of the NSA to calculate each Settlement Class Member's estimated non-Reimbursement Class component. (*Id.*)

- Using the Class Data, the Settlement Administrator will calculate the total Workweeks for all Reimbursement Class Members. (*Id.*) The respective Workweeks for each Reimbursement Class Member will be divided by the total Workweeks for all Reimbursement Class Members, resulting in the Reimbursement Payment Ratio for each individual Settlement Class Member. (*Id.*) Each Reimbursement Class Member's Payment Ratio will then be multiplied by 15% of the NSA to calculate each Reimbursement Class Member's estimated Reimbursement Class component

For tax purposes, each Individual Settlement Payment shall be allocated as follows: (a) 25% as wages subject to IRS Form W-2 reporting and applicable taxes/withholdings; and (b) 75% as non-wage income, penalties, and interest for which an IRS Form 1099 will be issued. (*Id.*, ¶ 58(b)(ii).) If Settlement checks remain uncashed after 180 days of issuance (after additional notice has been sent to the Class Members to whom those checks were issued at 120 days post-issuance), then such funds, plus any accrued interest, will be tendered to the State Controller's Office Unclaimed Property Fund in the name of the Settlement Class Members who did not cash their settlement checks. (*Id.*, ¶ 58(b)(iv).)

### D. Scope of the Class Member Releases

In consideration for their Settlement Shares, as of the Effective Date, Plaintiff and all Class Members who do not submit a timely and valid Request for Exclusion (i.e., Settlement Class Members) will be deemed

to have fully, finally, and forever released, settled, compromised, relinquished, and discharged Perdue Farms, Inc., Perdue Foods LLC, Petaluma Acquisition, LLC, Coleman Natural Products, Inc., and Coleman Natural Foods, LLC (collectively the "Defendants") and each of the Defendants' past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, franchisees, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, and assigns. (*Id.*, ¶¶ 13, 39, 49.) The "Released Claims" are all Claims, causes of action, as well as all predicate claims based on the facts and/or legal theories alleged in the Action and the PAGA Letter, or reasonably could have been alleged based on the facts and legal theories alleged in the Action and the PAGA Letter, including the following claims: (1) all claims for meal period violations, including claims for late, short, interrupted and/or missed meal periods and/or the failure to pay premiums, and the alleged failure to properly record meal periods; (2) all claims for rest break violations, including claims for late, short, interrupted, missed, or otherwise improperly controlled rest breaks and/or the failure to pay premiums; (3) all claims for unpaid wages, including claims for minimum, overtime, and double-time wages, the alleged failure to pay for all time worked, and the alleged failure to pay for all hours worked at correct rates, including overtime at the correct rates; (4) all claims for unreimbursed expenses, including expenses incurred for personal cell phone usage and mileage; (5) all claims for improper or inaccurate itemized wage statements, including alleged violations of Labor Code Section 226(a)(1)-(9) as well as claims for injuries suffered therefrom;(6) all claims for the untimely payment of final wages and associated waiting time penalties under Labor Code Section 203; (7) all claims for failure to pay wages without discount, violations of section 212 of the California Labor Code; (8) all claims under the Business & Professions Code (including Section 17200 *et seq.*); (9) all claims for civil penalties under the Labor Code Private Attorneys General Act of 2004, Labor Code Section 2699 *et seq.* ("PAGA"); other claims for penalties under the wage and hour laws pleaded in the Action and in the PAGA Letter; and all damages, penalties, interest and other amounts recoverable under all Claims under California and federal law. (*Id.*, ¶ 32.)

## IV. THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

### A. The Best Practical Notice of Settlement Has Been Provided to the Class

The mailing of the Notice of Proposed Class Action and PAGA Settlement and the Request for Exclusion Form to Class Members (collectively, the "Notice Packet"), and the general administration of the

notice process as described above, meets the requirements for the "best practicable" notice in this case as is necessary to protect the due process rights of Class Members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of litigation and explanation of opt-out rights satisfies due process). Indeed, individual Notice Packets were served on each Class Member at his or her most recent address, after cross-referencing each address with U.S. Post Office records; Class Members also were directed to a dedicated website that included the Settlement documents and other Settlement-related information. Moreover, the Class Notices informed Class Members of the pendency of the action and their right not to participate in the Settlement. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval processes.

This lack of governmental objection to the Settlement further supports final approval.

**B.     The CAFA Notice Requirements Have Been Satisfied**

Although there is no governmental participant in this case, pursuant to 28 U.S.C. section 1715 (the Class Action Fairness Act ("CAFA")), Defendants provided notice of the Settlement to the Office of the Attorney General for the United States and the Office of the Attorney General for the States of California; Colorado; Delaware; Georgia; Hawaii; Maryland; Minnesota; Ohio; and Washington. (ECF 56, ¶ 2.) "[A]lthough CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010). To date, no federal or state official has raised such concerns.

**C.     Final Approval Standards under Rule 23**

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of

the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [...] favors settlements, particularly where complex class action litigation is concerned"). On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel [...] and the reaction of the class members to the proposed settlement." *Id.*; *see also Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

### D. The Settlement Is Presumptively Fair Because of the Positive Response to the Settlement by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arm's-Length Negotiations

The Court should begin its analysis of this Settlement with a presumption that it is fair and should be approved, due to (1) the fact that not a single Class Member objected to the Settlement; (2) the meaningful discovery conducted; (3) Class Counsel's experience in this kind of litigation; and (4) the arm's-length negotiations that took place before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after appropriate discovery are *prima facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v.*

*Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

### 1. Class Members' Response to the Settlement Is Positive

Out of 2,153 Class Members, not a single Class Member objected to the Settlement. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (holding that in "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action[s] are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837-38 (9th Cir. 1976).

Moreover, only 4 Class Members opted out of the Settlement.

This overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (finding opt-out rate of 16 of 329 class members (approximately 4.8%) low, and explaining that where exclusions and opt-outs are low, there is presumption of favorable class reaction).

### 2. The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues

The Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that touchstone of analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery) (citation omitted). Before any mediation, Class Counsel reviewed hundreds of pages of documents, as well as payroll and timekeeping data, produced by Defendants. (ECF 72-1, ¶¶ 30-31.) The Parties also spent significant time preparing for, and taking part, in mediation.

### 3. Counsel's Endorsement of the Settlement Is Entitled to Great Weight

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West*

*Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, the Parties and their counsel endorse the Settlement as fair, adequate, and reasonable. (ECF 68-1, ¶ 44.) Class Counsel have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. (ECF 72-1, ¶¶ 4-15.) The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

    **4.**    **The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations.**

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42).

The Parties engaged in a full-day mediation. (ECF 49-1, ¶¶ 8-9.) Before the mediation, the Parties submitted mediation briefing, including detailed data analyses and assessments, and substantial evidence. (*Id.*)

    **5.**    **The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation**

        **a.**    **The Value of the Settlement Favors Final Approval**

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Accordingly, the "settlement is not to be judged against a […] speculative measure of what *might* have been achieved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from

collusion." *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement—$1,775,000—is a fair and reasonable result, especially in light of the defenses raised by Defendants, including its assertions that that the putative class had opportunity for meal periods of at least 30 minutes within the first 5 hours of work, and 10-minute rest periods for every 3½ hours of work, relieving them of any liability because, under *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1040 (2012), while an employer must provide employees with the opportunity to take meal and rest breaks, it need not ensure that the employees actually do so; an employer satisfies its obligations if it relieves its employees of all duties, relinquishes control over their activities, and permits them a reasonable opportunity to take uninterrupted breaks. (ECF 49-1, ¶ 12.) Defendants also argued that Plaintiff's Labor Code section 2802 claims fail because Defendants reimbursed the putative class for all necessary business expenses. (*Id.*, ¶ 13.) They contended that, to the extent Plaintiff claims he incurred expenses related to the use of his personal cellphone it was not for business purposes, and that Defendants never directed Plaintiff to use his personal cellphone. (*Id.*) Finally, Defendants contended that because Plaintiff's wage statement, final pay, and UCL claims are entirely derivative of the other claims in this matter, they too would fail for the same reasons. (*Id.*, ¶ 14.)

Moreover, the MSA represents a reasonable, meaningful recovery for Class Members. (*Id.*, ¶ 25.) Accordingly, the $1,775,000 MSA is well within the range of reasonableness.

### b. Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members

When a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.*, No. 1:08-CV-01453-BAM, 2014 WL 29743, at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013

WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …").

Similarly here, Defendants continue to contest liability and the propriety of class certification. Defendants' denial of liability, paired with their diligent opposition to class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Settlement.

Moreover, this class action involves intricate legal and factual questions. Litigating these complex claims would require substantial additional discovery and pre-trial motions (including motions for certification and decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence. (ECF 72-1, ¶¶ 33-35.) Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues. (*Id.*, ¶ 36.) Once liability had been established on a class-wide basis, Class Members might be required to testify at individual damages mini-trials. As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay. In contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members. Such a result benefits the Parties and the court system.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

DATED: January 4, 2023        SETAREH LAW GROUP

*/s/ Jose Maria D. Patino, Jr.*
SHAUN SETAREH
WILLIAM M. PAO
JOSE MARIA D. PATINO, JR.
Attorneys for Plaintiff
RONNIE WILLIAMS